**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VALLEY NATIONAL BANK,                     ) | Case No.: 1:21-cv-1155 AWI JLT |
|                                           ) | |
|            Plaintiff,                     ) | FINDINGS AND RECOMMENDATIONS |
|                                           ) | GRANTING PLAINTIFF'S MOTION FOR |
|        v.                                 ) | DEFAULT JUDGMENT |
|                                           ) | |
| ROAD LINER LLC,                           ) | (Doc. 11) |
|                                           ) | |
|            Defendant.                     ) | |
|                                           ) | |
|_____) | |

Valley National Bank assert that Road Liner LLC breached a contract related to the financing of premiums charged by an insurance company.  (Doc. 1.)  Because Road Liner LLC has not responded to the allegations in the complaint, Plaintiff now seeks default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure.  (Doc. 11.)

The Court finds the matter suitable for decision without oral argument.  Therefore, the motion is taken under submission pursuant to Local Rule 230(g) and General Order 618, and the hearing date of November 16, 2021 is **VACATED**.  For the following reasons, the Court recommends the motion for default judgment be **GRANTED**.

**I.      Procedural History**

Valley National Bank initiated this action by filing a complaint on July 31, 2021.  (Doc. 1.)  Road Liner LLC was served with the summons and complaint on August 16, 2021.  (Doc. 6.)  Although properly served with the summons and complaint, Road Liner failed to respond to the complaint within

1

the time prescribed by the Federal Rules of Civil Procedure.  Upon the application of Plaintiff, default was entered against Defendant on September 8, 2021.  (Docs. 8, 9.)  Valley National Bank filed the motion for default judgment now pending before the Court on October 19, 2021.  (Doc. 17.)  Road Liner has neither appeared nor opposed the motion.

## II.   Legal Standards Governing Default Judgment

The Federal Rules of Civil Procedure govern the entry of default and default judgment.  After default is entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment.  Fed. R. Civ. P. 55(a)-(b).  When the claims are "for a sum certain or a sum that can be made certain by computation," judgement shall be entered for that amount and costs against a defendant.  Fed. R. Civ. P. 55(b)(1).

When an amount is not for a sum certain, a plaintiff must apply to the Court for entry of default judgment.  Fed. R. Civ. P. 55(b)(2).  Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. *Pope v. United States*, 323 U.S. 1, 22 (1944).  In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of North Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Entry of default judgment is within the discretion of the Court.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment.  *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986).  The Ninth Circuit determined:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  As a general rule, the issuance of default judgment is disfavored.  *Id.* at 1472.

1    **III.    Factual Allegations and Evidence**

2         The Court accepts the factual assertions as true, because default has been entered.  *See Pope*,

3    323 U.S. at 22.  In addition, the Court may consider the "Commercial Insurance Premium Finance

4    Agreement and Disclosure Statement" with Road Liner LLC executed on April 28, 2020, which was

5    attached the Complaint.[1]  (Doc. 1 at 9-10.)

6         Valley National Bank reports that it "is a national banking association," and "does business

7    through a division known as Agile Premium Finance."  (Doc. 1 at 1, ¶ 1.)  The Bank reports its Agile

8    Premium Finance division "is active in the commercial insurance premium finance industry."  (*Id.* at

9    3, ¶ 7.)  "In that capacity, Valley makes loans to commercial enterprises for the purpose of financing

10   commercial insurance premiums."  (*Id.*)

11        Road Liner LLC "operates a business that provides trucking services."  (Doc. 1 at 1, ¶ 2.)  It

12   "engaged the services of an insurance broker … to assist … in identifying and obtaining commercial

13   insurance."  (*Id.* at 2, ¶ 8.)  "Defendant decided to finance the payment of the premiums instead of

14   using its own money to pay the premiums charged by the insurance company issuing the policies."

15   (*Id.* at 3, ¶ 12.)  Accordingly, Defendant contacted Valley National Bank "to obtain financing to pay

16   for the premiums on the policies that Defendant had selected."  (*Id.*, ¶ 13.)

17        On April 28, 2020, Plaintiff and "Defendant signed a Commercial Insurance Premium Finance

18   Agreement and Disclosure Statement (the 'PFA')."  (*Id.* at 3, ¶ 15; *see also id.* at 9-10.)  "Following

19   the signing of the PFA, Plaintiff provided the funds so that Defendant could purchase the commercial

20   insurance policies identified in the PFA."  (*Id.*, ¶ 16.)  In return for the funds, "Defendant agreed to

21   make monthly installment payments to Plaintiff to pay the debt it owed Plaintiff," in the amount of

22   $12,553.88 per month, with payments beginning April 30, 2020, and due on the 30th of each month

23   thereafter.  (*Id.* at ¶ 17; *see also id.* at 9.)  The total for the premiums to be funded was $145,896.00,

24

25        [1] "[D]ocuments attached to the complaint and incorporated by reference are treated as part of the complaint, not
     extrinsic evidence."  *Summit Media LLC v. City of Los Angeles*, 530 F. Supp. 2d 1084, 1096 (C.D. Cal. 2008).  Documents
26   are incorporated into the complaint by reference "in situations where the complaint necessarily relies upon a document or
     the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no
27   disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *see also
     United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).  Because the Complaint relies upon information in
28   the agreement—and there is no dispute regarding the authenticity or relevance of either document—the Court finds the
     document was incorporated by reference and may be considered.

and Defendant made a down payment of $36,197.00. (*Id.* at 9.) Thus, the principal amount financed for Defendant was $109,197.00. (*Id.* at 9.)

Plaintiff reports it "performed all conditions, covenants, and promises on its part to be performed under the PFA." (Doc. 1 at 3, ¶ 16.) For two months, "Defendant made monthly payments to Plaintiff consistent with the terms under the PFA." (*Id.*, ¶ 18.) However, Defendant "stopped making payments under the PFA," at which time it owed Plaintiff the principal amount of $84,089.24. (*Id.* at 3-5, ¶¶ 19, 24, 35.) According to Plaintiff, "Defendant stopped making payments to Plaintiff because the insurance company selected by Defendant ceased operating and could no longer provide insurance coverage, resulting in the cancellation of the policies." (*Id.*, ¶ 19.) Plaintiff reports this resulted in a default "no later than June 30, 2020" under the PFA, which indicates:

> Default occurs when: [i] Insured does not pay an installment when it is due [ii] insured is in default with any other agreement with Agile Premium Finance [iii] Insured fails to comply with any of the terms of the Agreement; [iv] insured files for or is involved in any bankruptcy proceeding [v] any of the financed policies are cancelled [vi] Insurance companies have filed for bankruptcy or are otherwise insolvent.

(*Id.* at 3, ¶¶ 21, 24; *id* at 10, PFA ¶ 8.) Thus, Plaintiff concludes "Defendant is in default for at least two reasons: (i) the monthly installments due under the PFA have not been paid and (ii) the financed policies have been cancelled." (*Id.* at 4, ¶ 22.)

Pursuant to the PFA, interest began to accrue from the policy effective date and would "continue to accrue until the Loan is paid in full." (Doc. 1 at 10, PFA ¶ 10.) The parties also agreed "Agile Premium Finance may charge interest on the outstanding principa[l] balance at the maximum rate permitted by the from the date of the default until the balance is paid in full." (*Id.*) Further, the PFA indicates that "Defendant must pay the "collection costs and expenses" incurred by Plaintiff as a result of or in connection with enforcing its rights under the PFA, with such expenses including attorney fees." (*Id.* at 4, ¶ 26; *see also id.* at 10, PFA ¶ 8.)

Plaintiff reports that "[a]s of May 31, 2021, Defendant owed Plaintiff the principal amount of $84,089.24 and the total amount of $89,611.50 based on the annual percentage rate of 8.25% set forth in the PFA." (Doc. 1 at 5, ¶ 35.) Plaintiff "made a demand on Defendant for payment, but payment has not been made." (*Id.*, ¶ 25.) Thus, Plaintiff seeks "default judgment against Road Liner for damages in the amount of $90,013.50, which includes the outstanding balance that Road Liner owes

4

1    pursuant to the PFA ($89,611.50) and Valley's filing cost of $402.00."  (Doc. 11 at 2, ¶ 5.)

2    **IV.    Discussion and Analysis**

3            Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds the factors weigh

4    in favor of granting the motion for default judgment.

5            **A.    Prejudice to Plaintiff**

6            The first factor considers whether a plaintiff would suffer prejudice if default judgment is not

7    entered, and potential prejudice to the plaintiff weighs in favor of granting a default judgment.  *See*

8    *Pepsico, Inc.*, 238 F. Supp. 2d at 1177.  Generally, where default has been entered against a defendant,

9    a plaintiff has no other means by which to recover damages.  *Id.*; *see also Microsoft Corp. v. Nop*, 549

10   F. Supp.2d 1233, 1236-37 (E.D. Cal. 2008) ("Plaintiff will be prejudiced if default judgment is denied

11   because plaintiff will be without other recourse for recovery").  Because Plaintiff has no other means

12   to recover damages from Road Liner, the Court finds Plaintiff would be prejudiced if default judgment

13   is not granted, and this factor weighs in favor of the entry of default judgment.

14           **B.    Merits of Plaintiff's claims and the sufficiency of the complaint**

15           Given the kinship of these factors, the Court considers the merits of Plaintiff's claims and the

16   sufficiency of the complaint together.  *See Yelp Inc. v. Catron,* 70 F. Supp. 3d 1082, 1098 (N.D. Cal.

17   2014) ("For ease of analysis, the merits of Plaintiffs substantive claims and sufficiency of the complaint

18   are considered together"); *see also Premier Pool Mgmt. Corp. v. Lusk*, 2012 WL 15932060, at *5 (E.D.

19   Cal. May 4, 2012).  The Ninth Circuit has suggested that, when combined, the factors require a plaintiff

20   to "state a claim on which the plaintiff may recover."  *Pepsico, Inc.*, 238 F. Supp. 2d at 1175.

21           Plaintiff's first claim for relief in the complaint is for breach of contract. (Doc. 1 at 4-5.)  A

22   claim of breach of contract arises under state law and requires a plaintiff to demonstrate: (1) the

23   existence of a contract, (2) performance or excuse for nonperformance by the plaintiff, (3) breach by

24   the defendants, and (4) resulting damages. *Alcalde v. NAC Real Estate Invs. & Assignments, Inc.*, 316

25   Fed. App'x 661, 662 (9th Cir. 2009) (citing *First Comm. Mort. Co. v. Reece*, 108 Cal. Rptr. 2d 23, 33

26   (Ct. App. 2001)); *see also Haberbush v. Clark Oil Trading Co.*, 33 Fed. App'x 896, 898 (9th Cir. 2002)

27   (identifying "agreement, consideration, performance by plaintiff, breach by defendant, and damages" as

28   elements to a breach of contract).

On April 28, 2020, Plaintiff and Defendant entered into an agreement for the financing of the commercial insurance policies identified in the agreement, under which Defendant agreed to make monthly payments to Plaintiff for the financing.  (Doc. 1 at 9-10.)  Thus, Plaintiff has established that an agreement existed between the parties.  Further, Plaintiff reports that it provided the funds and "performed all conditions, covenants, and promises on its part to be performed under the PFA."  (Doc. 1 at 3, ¶ 16.)  However, Defendant only partially performed under the agreement and stopped making the required payments beginning June 30, 2020.  (*Id.* at 3-4, ¶¶ 19, 24.)  Thus, Defendant failed to comply with the terms of the agreement with Plaintiff and defaulted on the terms of the PFA.  (*See* Doc. 1 at 10, PFA ¶ 18.)

Based upon the allegations of the Complaint and document incorporated by reference, the Court finds Plaintiff established a claim for breach of contract under California law. Thus, these factors support the entry of default judgment.

**C.     Sum of money at stake**

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct."  *Pepsico, Inc.*, 238 F.Supp.2d at 1176.  Here, Plaintiff seeks "default judgment against Road Liner for damages in the amount of $90,013.50," which includes the outstanding balance of $89,611.50 under the PFA and the filing fee in this action of $402.00.  (Doc. 11 at 2, ¶ 5.) Thus, the amount of damages is proportional to Defendants' conduct, and this factor does not weigh against default judgment.

**D.     Possibility of dispute concerning material facts**

There is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts factual allegations in the Complaint as true and (2) though properly served, the defendant failed to appear and defend.  *See Pepsico, Inc.*, 238 F.Supp.2d at 1177; *see also Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists").  Therefore, this factor does not weigh against default judgment.

///

6

**E.      Whether default was due to excusable neglect**

Generally, the Court will consider whether a defendant's actions— such as failure to file an answer— is due to excusable neglect.  *See Eitel*, 782 F.2d at 1472.  Road Liner was served with the summons and Complaint on August 16, 2020.  (Doc. 6.)  Thus, Defendant was aware of the suit, and it is unlikely the failure to respond was the result of excusable neglect.  *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants "were properly served with the Complaint, the notice of entry of default").  Accordingly, this factor does not weigh against default judgment.

**F.      Policy disfavoring default judgment**

As noted above, default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible."  *Eitel*, 782 F.2d at 1472.  Here, however, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against default judgment because Defendant's failure to appear makes a decision on the merits impractical.

**V.      Relief Requested**

Based upon the foregoing, the *Eitel* factors weigh in favor of granting default judgment, and the Court turns to the relief requested by Plaintiff.  If the facts necessary to determine the damages are not contained in the complaint, or are legally insufficient, they will not be established by default and cannot be considered a sum certain. *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir.1992).

Plaintiff, both now and in the Complaint, sought the unpaid principal of the amount due on the PFA, in the amount of $84,092.24, plus 8.25% interest under the terms of the PFA.  (Doc. 1 at 5, ¶ 35; *see also* Doc. 11 at 2) Including interest, Plaintiff seeks a total of $89,611.50 under the PFA.  (*Id.*)  In addition, Plaintiff seeks costs in the amount of $402.00 for the filing of this action.  (Doc. 11 at 2; *see also* Doc. 11-1 at 2, Eli Decl. ¶ 6.)  Thus, Plaintiff requests a total of $90.013.00.  (*Id.*)

As noted, the PFA indicates an annual percentage rate of 8.25%.  (Doc. 1 at 9.)  In addition, if Road Liner defaulted on the terms of the PFA through failure to make payments, Plaintiff was entitled "to collect payment of any unpaid amounts due."  (*Id.* at 10, PFA ¶10.)  Thus, Plaintiff is entitled to recover the unpaid principal amount of $84,089.24.  In addition, the PFA indicates that Defendant agreed "to pay… interest charges [and] collection costs and expenses incurred by Agile Premium

Finance as a result of or in connection with enforcing its rights under the Agreement." (*Id.*) Consequently, the PFA establishes Plaintiff's right to the interest calculated and the costs related to the filing of the motion.

For the reasons discussed above, the Court finds the entry of default judgment is appropriate and Plaintiff is entitled the requested relief.

## VI.    Findings and Recommendations

The *Eitel* factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court.  *See Aldabe*, 616 F.2d at 1092.  Based upon the foregoing, the Court **RECOMMENDS**:

1.    Plaintiff's motion for default judgment (Doc. 11) be **GRANTED**.

2.    Judgement be entered in favor of Plaintiff Valley National Bank and against Defendant Road Liner LLC in the amount of $90,013.50; and

3.    The Clerk of Court be directed to close this action.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within fourteen days of the date of service of these Findings and Recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).


IT IS SO ORDERED.

Dated:   **November 9, 2021**                  _____ **/s/ Jennifer L. Thurston**
                                                                    CHIEF UNITED STATES MAGISTRATE JUDGE

8